MARK R. ZANA, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 50786

September 24, 2009 216 P.3d 244

*Christopher R. Oram*, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Thomas M. Carroll*, Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, DOUGLAS, J.:

This appeal presents three main issues. First, we consider whether testimony regarding prior bad acts is admissible when the resulting court proceedings were sealed or expunged. Second, we address whether the jury committed misconduct in this case, and if so, whether such misconduct warranted a new trial. Third, we discuss whether the district court erred in denying the motion to sever the lewdness counts from the child pornography counts.[1]

We conclude that the district court may permit testimony that is confined to a witness's personal experiences so long as the witness does not rely on the previously sealed or expunged court proceedings and does not indicate that such proceedings took place. Next, we conclude that any jury misconduct that occurred in this case did not prejudice the verdict, and thus, a new trial was not warranted. Finally, we conclude that the district court did not abuse its discretion by denying the motion to sever the lewdness counts from the pornography counts because the evidence presented in each case was admissible in the other case. We therefore affirm appellant Mark R. Zana's conviction.

---

[1]Appellant also argues that: (1) he is entitled to a new trial based upon the introduction of inadmissible evidence of other crimes, wrongs, or acts; (2) the testimony about his prior bad acts was inadmissible pursuant to NRS 48.045(2); (3) the district court erred when it permitted several instances of hearsay testimony to be admitted; (4) the district court erred when it failed to suppress images obtained from his computer because the search warrant did not contain sufficient information to support probable cause; (5) insufficient evidence supported his conviction of possession of visual representation depicting sexual conduct of a person under the age of 16; (6) the district court erred when it failed to dismiss the child pornography counts based on improper pleading and notice; and (7) his convictions must be reversed based upon the cumulative errors committed during trial. We have carefully considered these issues and conclude that these additional challenges are without merit.

## FACTS AND PROCEDURAL HISTORY

The case before us arose out of multiple allegations by several female students that Zana, a fifth-grade teacher, had touched them inappropriately while they were under his supervision. In total, six girls came forward alleging Zana would touch their breasts and/or invite them to place their hand in his pocket to get candy. During the investigation of these allegations, two previous allegations against Zana came to light.

In 1992, while Zana was living in Pennsylvania, he was accused of pinning a 13-year-old girl against his bed and fondling her breast. The case against Zana was concluded when he agreed to a plea bargain that prohibited him from teaching minors. The records of the case were subsequently expunged pursuant to the plea agreement and in accordance with Pennsylvania law.

Then, in 1998 while working as a teacher in Henderson, Nevada, Zana was accused of enticing a second-grader to touch his penis by telling her she could retrieve candy from his pocket. Criminal proceedings were also initiated as a result of the allegation in Henderson, but that case was dismissed because the victim's parents did not want her to have to testify. The records of the dismissed Henderson case were subsequently sealed. Prior to trial, the State filed a motion to unseal the records of the 1998 Henderson case, arguing it was going to prosecute Zana for that incident as well. The justice court unsealed the records for that limited purpose.[2]

The State charged Zana with 9 counts of lewdness with a child under the age of 14. He was also charged with 12 counts of possession of visual representations depicting sexual conduct of a person under the age of 16 stemming from pictures investigators found on his computer.

At trial, the State introduced the prior allegations against Zana through the testimony of his alleged victims pursuant to NRS 48.045. Through this testimony, the State sought to prove Zana's motive in touching his female students and to rebut Zana's claims that the touching was accidental, misinterpreted, or an isolated mistake. Because records of the previous incidents were sealed or ex-

---

[2]Zana appealed the unsealing of these records to the district court and the record does not disclose the issue's ultimate resolution. Moreover, no party contests, and we decline to consider, the propriety of unsealing these records. We do note, however, that to inspect sealed records of a defendant's prior offense, the State must demonstrate that based on newly discovered evidence it has sufficient evidence to reasonably conclude that the defendant will be tried for that prior offense. NRS 179.295; see *Walker v. Dist. Ct.*, 120 Nev. 815, 820, 101 P.3d 787, 791 (2004) (implying that the State's failure to arrest for prior offense used to justify record's unsealing suggests unsealing was error). Here, the State never charged Zana in the 1998 Henderson case.

punged, the district court limited the victims' testimony to Zana's actual conduct and the witnesses' experiences, and excluded testimony regarding subsequent charges and judicial proceedings.[3]

## DISCUSSION

First, we will discuss the admissibility of testimony regarding prior bad acts by the defendant, where the records of the criminal proceedings resulting from those acts have been sealed or expunged. Next, we will address whether jury misconduct occurred in this case and, if so, whether it was prejudicial and, thus, warranted a new trial. Finally, we will consider whether the district court should have granted Zana's motion to sever the lewdness charges from the pornography charges.

### Sealed or expunged cases

Zana contends that the testimony about the allegations in Pennsylvania and Henderson were improperly admitted because these cases had previously been sealed or expunged. Zana believes that the testimony about these previous allegations violated the courts' prior orders to seal or expunge the records. We disagree.

When a court orders a record sealed, "[a]ll proceedings recounted in the record are deemed never to have occurred." NRS 179.285. This fiction permits the subject of the sealed proceedings to properly deny his or her arrest, conviction, dismissal, or acquittal in connection with the proceedings. *See Yllas v. State*, 112 Nev. 863, 867, 920 P.2d 1003, 1005 (1996). In this way, sealing orders are intended to permit individuals previously involved with the criminal justice system to pursue law-abiding citizenship unencumbered by records of past transgressions. *See Baliotis v. Clark County*, 102 Nev. 568, 570-71, 729 P.2d 1338, 1340 (1986). "It is clear, however, that such authorized disavowals cannot erase history. Nor can they force persons who are aware of an individual's criminal record to disregard independent facts known to them." *Id.* at 571, 729 P.2d at 1340.

Thus, as we have previously observed, while a sealing order erases many of the consequences that potentially flow from past criminal transgressions, it is beyond the power of any court to

---

[3]One witness tangentially referenced a prior court proceeding, but the reference was inadvertent, brief, and the district court acted quickly to rectify the situation. Outside the presence of the jury, the district court admonished the witness and subsequent witnesses not to refer to any court proceeding. Because the reference was fleeting and did not explicitly refer to a court case, we conclude its erroneous admission was harmless and do not address it further.

unring a bell. *See id.* For example, in *Baliotis*, the Las Vegas Metropolitan Police Department recommended denial of a convicted felon's application for a private detective's license based on his prior felonies even though records of the applicant's felony convictions were sealed. *Id.* at 569, 729 P.2d at 1339. This court upheld the recommendation because the officers investigating the applicant's character had personal knowledge of the applicant's criminal history. *Id.* at 570-71, 729 P.2d at 1339-40. In so doing, we respected the sealing statute's limited effect: it erases an individual's involvement with the criminal justice system of record, not his actual conduct and certainly not his conduct's effect on others. *See id.* at 571, 729 P.2d at 1340.

Here, the district court properly excluded testimony regarding the court proceedings that were subject to the sealing orders in order to preserve the effect of the orders, while it correctly admitted testimony to which the sealing orders did not apply. Neither the Pennsylvania order nor the Henderson order erased the witnesses' memories of Zana's inappropriate conduct. Just as the sealing statute did not require the licensing commission in *Baliotis* to disregard the investigating officers' independent knowledge, it does not require the district court to ignore the recollections of Zana's accusers. Although statutes empower courts to seal a proceeding's records, individual memories of events outside the courtroom are beyond such judicial control.

Moreover, the district court's exclusion of testimony regarding the proceedings that were subject to the sealing orders secured the integrity of the sealing orders. Coincident with the purpose of the sealing statutes, the State did not use records of prior proceedings against Zana. Instead, the State admitted testimony of the prior events against Zana and illuminated Zana's pattern of behavior without implicating the sealed records.

We therefore conclude that the district court did not err in admitting the testimony. Instead, it properly restricted the scope of the testimony to preserve the statutory effect of the previous cases' sealing or expungement orders while allowing relevant testimony.

## Jury misconduct

Zana contends the district court erred when it denied his motion for a mistrial in the face of juror misconduct. Although the juror's behavior was inappropriate, we conclude that the misconduct did not prejudice the jury's decision and, thus, affirm the district court's decision to deny the motion for mistrial.

While investigating the allegations of inappropriate touching, investigators discovered what appeared to be pornographic pictures of young females on Zana's home computer. The central question left

to the jury's determination was the actual age of the females pictured in the photographs relating to the counts of possession of visual representation depicting sexual conduct of a person under the age of 16. At trial, there was competing expert testimony regarding the age of the females.

The jury deliberations in this case began on a Friday and finished on a Monday. While at home over the weekend, one juror engaged in an Internet search for a particular pornographic website that was mentioned during the trial.[4] Despite the juror's efforts, he was unable to locate the website. Upon returning on Monday to deliberate, he advised his fellow jurors of his fruitless search but came to no conclusion about the meaning of that failure. After discussing the search for a short time, the jury returned to its deliberations and rendered a verdict a few hours later.

When Zana later learned of the juror's online research, he moved for a mistrial. At the hearing on the matter, every juror available testified about the Internet search and the resulting discussion. The district court then concluded that while the juror had committed misconduct by conducting his own investigation, the information obtained through the juror's independent research was vague, ambiguous, and only discussed for a brief time, and therefore, the misconduct was not prejudicial. Based on this conclusion, the district court denied the motion for a mistrial.

"A denial of a motion for a new trial based upon juror misconduct will be upheld absent an abuse of discretion by the district court. Absent clear error, the district court's findings of fact will not be disturbed." *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003) (internal citations omitted). "However, where the misconduct involves allegations that the jury was exposed to extrinsic evidence in violation of the Confrontation Clause, de novo review of a trial court's conclusions regarding the prejudicial effect of any misconduct is appropriate." *Id.* at 561-62, 80 P.3d at 453.

To justify a new trial, "[t]he defendant must, through admissible evidence, demonstrate the nature of the juror misconduct and that there is a reasonable probability that it affected the verdict." *Id.* at 565, 80 P.3d at 456. When analyzing extrinsic material to determine

---

[4]Zana also characterized additional juror behavior as misconduct, including attempting to guess the ages of churchgoers and testing the accessibility of a seated man's pants pocket. Because we conclude such behavior is not misconduct but simply "observation based on matters generally experienced by people in their everyday lives," we confine our discussion of the jury misconduct to the Internet search. *Meyer v. State*, 119 Nev. 554, 568, 80 P.3d 447, 458 (2003).

whether the jury's exposure to the material resulted in prejudice to the defendant, the district court is required to objectively evaluate the effect it had on the jury and determine whether it would have influenced "the average, hypothetical juror." *Id.* at 566, 80 P.3d at 456. Several factors guide the juror prejudice inquiry, including how long the jury discussed the extrinsic material, when that discussion occurred relative to the verdict, the specificity or ambiguity of the information, and whether the issue involved was material. *Id.*

We conclude that the juror's independent search of the Internet did amount to the use of extrinsic evidence in violation of the Confrontation Clause. However, we conclude that one juror's inability to locate a website mentioned during trial is not so prejudicial as to necessitate a new trial.

Upon review of the jurors' testimony at the hearing, it is clear that the jury only briefly discussed the fruitless search and then continued with its deliberation for at least a few more hours. Moreover, the fruitless search was highly ambiguous; there are many possible interpretations of the extrinsic information the juror presented and this resulted in little, if any, probative information being relayed to the other jurors. Furthermore, although the issue that motivated the search—the ages of the females depicted in the photographs on Zana's computer—was material, the fruitless search could in no way affect the jury's inquiry. Because the search's implications are ambiguous, it could not speak to a material issue in the case. Information so ostensibly irrelevant could not prejudice the average, hypothetical juror.

For the foregoing reasons, we conclude that the district court's denial of Zana's motion for a mistrial, based on juror misconduct, was not an abuse of discretion.

## Joinder of charges

We now turn to Zana's argument that the district court erred in denying his motion to sever the lewdness charges from the pornography charges. Zana contends that because the pornography charges are unconnected with the lewdness charges, the district court should have severed the two. However, given the cross-admissibility of the evidence in the two cases, we disagree.

" '[J]oinder decisions are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.' "

*Tillema v. State*, 112 Nev. 266, 268, 914 P.2d 605, 606 (1996) (quoting *Robins v. State*, 106 Nev. 611, 619, 798 P.2d 558, 563 (1990)). Criminal charges are properly joined whenever: (1) the acts leading to the charges are part of the same transaction, scheme, or plan or (2) the evidence of each charge would be admissible in the separate trial of the other charge. NRS 173.115; *Mitchell v. State*, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989); *see generally Robinson v. United States*, 459 F.2d 847, 855-56 (D.C. Cir. 1972).

Charges with mutually cross-admissible evidence are properly joined because in such a situation "the accused would fare no better from a severance and trial of the severed counts independently." *Robinson*, 459 F.2d at 855-56. Moreover, severance in such a case would naturally result in separate trials presenting identical evidence and consequentially result in needless judicial inefficiency. *See Robinson*, 459 F.2d at 856. Here, we conclude that joinder was proper because, had the district court granted the motion to sever the lewdness counts from the pornography counts, the evidence of each charge would have been admissible in the separate trial of the other charge.

First, the lewdness charge required the State to prove that Zana touched his young victims for the purpose of gratifying his lusts, passions, or sexual desires. NRS 201.230. The pornography found on Zana's computer suggests that Zana found pornographic images of young females sexually gratifying. The pornography evidence indicates Zana intentionally touched his female students for the purpose of satiating his sexual appetite, and that the touching was not by mistake or accident. Therefore, evidence of the pornography was admissible to prove the mental state required for the lewdness charge.

Likewise, evidence of Zana's lewd behavior with young girls under his supervision suggests that the pornography found on Zana's computer was not the result of an accident or mistake. To prove the underage pornography charge against Zana, the State had to prove that he knowingly and willfully possessed the materials. NRS 200.730. Evidence that he inappropriately touched young girls suggests contact with young girls sexually gratified Zana. It is reasonable to then infer that he did not possess pornographic photographs of young females accidently, but rather knowingly and willfully downloaded the photographs to satisfy the sexual desires his inappropriate touching evidences. Therefore, evidence of Zana's lewd behavior was admissible to prove the knowing and willful element of the pornography charge.

Thus, because evidence of the two charges was cross-admissible, the district court did not abuse its discretion in denying Zana's motion to sever the charges.

## CONCLUSION

We conclude that the district court properly exercised its discretion in admitting the testimony of Zana's prior victims, denying his motion for a mistrial based on juror misconduct, and denying his motion to sever lewdness and pornography charges. Accordingly, we affirm the judgment of conviction.

HARDESTY, C.J., PARRAGUIRRE, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.