THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, APPELLANT, v. HAMID FRANGUL, RESPONDENT.

No. 23947

January 20, 1994 867 P.2d 397

*Frankie Sue Del Papa,* Attorney General, and *M. Greg Mullanax,* Deputy Attorney General, Carson City, for Appellant.

*Edwin T. Basl,* Reno, for Respondent.

## OPINION

*Per Curiam:*

The Department of Motor Vehicles and Public Safety ("DMV") revoked the driver's license of Hamid Frangul ("Frangul") after Frangul refused to submit to a requested blood alcohol test. A district court later dismissed criminal charges for driving under the influence ("DUI"), stemming from the same incident of alleged drunk driving. Frangul then successfully sought an order sealing his criminal records relating to the dismissed DUI charges. Relying upon the sealing order, the district court reversed the DMV's revocation of Frangul's driver's license. That court accepted Frangul's argument that the DMV revocation proceedings are deemed, by operation of the sealing statute, "never to have occurred." Because we reject Frangul's interpretation of the sealing statute's effect on the implied consent statutes, we reverse.

On July 24, 1991 Frangul was stopped by a police officer for speeding through a red light. The officer who spoke to Frangul suspected that he was driving under the influence of alcohol. Frangul failed to perform field sobriety tests successfully, and refused to submit to an evidentiary test to determine his blood alcohol level. The officer then arrested Frangul for allegedly driving under the influence, and, under the implied consent law, served a Notice of Revocation of driver's license upon him for failing to take the test.

At Frangul's trial, DUI charges against him were dismissed when the state failed to call necessary witnesses. Frangul then petitioned the Reno Municipal Court for an order sealing the records relating to his arrest for DUI and the criminal charges filed in connection with that arrest, and the petition was granted. In the meantime, a DMV hearing officer found substantial evidence to support the revocation of Frangul's license and issued an order upholding it. Frangul then sought judicial review of that order in the district court, arguing that the sealing of his criminal file operated to nullify the DMV's revocation of his driver's license. Frangul relied on NRS 179.285, which provides that "all proceedings in [a sealed criminal] record are deemed never to have occurred." The district court agreed with Frangul, reversed the hearing officer and reinstated Frangul's driving privileges. The state appeals.

Review in this court from a district court's interpretation of a statute is de novo. NRS 233B.135 (court may set aside decision

on review because of error of law); Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 282, 607 P.2d 581, 532 (1980) (role of this court is identical to district court, to review the agency's findings under the standard provided by statute). Because the effect of the sealing statute upon the DMV revocation process is a pure question of law, considered for the first time in this case at the district court level, we undertake an independent analysis of the effect, if any, of the criminal record sealing statutes upon the implied consent statutes.

Implied consent statutes[1] provide for administrative, civil proceedings entirely separate and distinct from criminal statutes prohibiting drunk driving. State, Dep't Mtr. Vehicles v. Brown, 104 Nev. 524, 525 n.1, 762 P.2d 882, 883 n.1 (1988); *see also* State v. Uehara, 721 P.2d 705, 706-07 (Haw. 1986); Covington v. Dept. of Motor Vehicles, 102 Cal.App.3d 54, 59-60, 162 Cal.Rptr. 150, 153-54 (1980) (conviction for DUI did not render implied consent sanctions meaningless as each punishes the violator for a different illegal activity). A person who refuses to submit to a blood alcohol test risks license revocation under such a statute regardless of whether he is acquitted or convicted, and even when he is never charged with an offense or charges are later dismissed. *See Defense of Drunk Driving Cases* § 33.03 at 33-28 (Richard E. Erwin et al. eds., 1989) (Since "the 'offense' involved is the refusal to submit to testing . . . in most states the outcome of the criminal prosecution is totally irrelevant to the civil revocation proceeding."). We hold that Frangul's criminal arrest and prosecution existed wholly independently of the DMV revocation process.

Frangul asserts that the order sealing his criminal record nonetheless operated to nullify the DMV's revocation of his driver's license because the underlying events are deemed never to have occurred. Nevada's statute authorizing the sealing of criminal records provides that a person who has been arrested for alleged criminal conduct, and against whom charges are later dismissed, may petition for an order sealing *all records relating to the arrest.* NRS 179.255 (emphasis added). It also provides that "all *proceedings* recounted *in the record* are deemed never to have

---

[1]Nevada's "implied consent" statute authorizes the DMV to revoke a motorist's driver's license for refusal to submit to an evidentiary test to determine blood alcohol level. NRS 484.383. The officer requesting the test, as agent for the DMV, must revoke the license of an individual reasonably suspected of drunk driving who refuses to submit to a test. NRS 484.384, 484.385.

occurred, and the person to whom [the order] pertains may properly answer accordingly to any inquiry concerning the *arrest, . . .* and the events and proceedings *relating to the arrest.*" NRS 179.285 (emphasis added). The municipal judge granted Frangul's request for an order sealing his criminal record. Under the sealing statutes, then, all records "relating to" the arrest must be sealed, and all "proceedings in" the record and all events and proceedings "relating to" the arrest are deemed never to have occurred.

Since we hold that revocation proceedings are separate and distinct from DUI arrests, however, it logically follows that revocation is not a record, proceeding or event "relating to the arrest." The DMV has authority to revoke a license even when an officer does not arrest the individual who fails to take a requested blood alcohol test. Thus, a license revocation under the implied consent statute cannot be said to be "related to an arrest." As a result, the revocation order need not be sealed, nor is it deemed "never to have occurred."

Nor is the civil revocation proceeding a "proceeding[] recounted in the [sealed criminal] record." The DMV conducted its own revocation hearing and had a separate record pertaining to the revocation. This proceeding was civil in nature, not criminal, and was not before the district judge, nor contained in the criminal record before the court. Therefore, a civil, administrative license revocation is not a proceeding recounted in the criminal record, and is not reached by the expungement provisions of the sealing statute.

The legislative history of the sealing statute and our prior interpretations of these provisions support this result. The sealing statute was enacted to remove ex-convicts' criminal records from public scrutiny and to allow convicted persons to lawfully advise prospective employers that they have had no criminal arrests and convictions with respect to the sealed events. Baliotis v. Clark County, 102 Nev. 568, 570, 729 P.2d 1338, 1340 (1986) (citing hearings on bill in Assembly and Senate). We stated in *Baliotis* that "there is no indication that the statute was intended to require . . . licensing authorities to disregard information . . . known independently of the sealed records." *Id.* Neither can sealing orders "erase history." *Id.* at 571, 729 P.2d at 1340.

There is nothing in the text of the statute, the legislative history or our prior interpretations indicating that the legislature intended

to provide that the underlying events of a situation that leads to an arrest are deemed never to have occurred. Rather, the statute provides only that those events specifically "relating to" the arrest are deemed never to have occurred. As a result, the statute does not operate to expunge the outcome of a separate civil, administrative proceeding, even when a decision from that proceeding concerns a matter arising from the same events as the sealed arrest.

The district court erroneously focused on the timing of the implied consent admonition. The judge found that the implied consent admonition was read after Frangul was under arrest. He then held that everything that occurred after the arrest was deemed "never to have occurred." Thus, "by operation of law," the giving of the admonition never occurred, and Frangul could not have refused an admonition that was not given. This is erroneous for two reasons.

First, although whether Frangul was under arrest is a question of law properly addressed by the district court, the court should have given deference to the hearing officer's conclusions in light of the factual findings made by the officer. Jones v. Rosner, 102 Nev. 215, 217, 719 P.2d 805, 806 (1985) (legal conclusion not disturbed on appeal so long as intertwined with facts supported by substantial evidence). The hearing officer found that the implied consent admonition was given twice, and refused by Frangul, *before* Frangul was placed under arrest. This finding was based upon four statements of the two officers, who testified at the hearing that the admonition was read, refused and clarified, but that Frangul still refused to submit to the test. The officers testified that they *then* placed Frangul under arrest. This is substantial evidence to support the finding, and legal conclusion, that Frangul was arrested after the admonition was read.

Second, even if Frangul *was* under arrest when the admonishment was read, there is no support for the conclusion that the statute was intended to erase "everything alleged to have *occurred after* the arrest."[2] On the contrary, the sealing statute refers to "all events or proceedings *relating to* the arrest." NRS 179.285 (emphasis added). We have held that license revocation

---

[2]The district court's judgment reads:

Officer Holmes' testimony establishes that petitioner was already under arrest when he allegedly refused to consent to the evidentiary breath test. Of course, the Reno Municipal court order of January 30, 1992, as well as NRS 179.285, provide that all proceedings in the record—that is, *everything alleged to have occurred after the arrest—are deemed never to have occurred.*

is not "related to" an arrest. As a result, it does not matter whether the admonition and refusal occurred before, during or after the arrest.

Accordingly, we reverse the trial court's order and remand the case to the district court to reinstate the DMV's revocation of respondent's driving privileges.